### WILLIAM REED *against* FRANCIS INGRAHAM.

[S. C. 4 Dall. 169.]

On a stock contract of two parts, in one whereof I. promises to receive from B. or order, a certain amount of 6 per cents, and pay him at a certain rate, and in the other, B. promises to transfer to I. or his order, the same amount of 6 per cents, upon his paying to him or his order the same rate, the assignee of B. may maintain a suit in his own name for breach of contract.

THIS cause was tried at the sittings for Philadelphia county on the 19th June last, and a verdict given for the plaintiff for 2964 dollars 23 cents (Vide 3 Dall. Rep. 505. S. C.

A motion was now made by agreement for a new trial.

The plaintiff's declaration contained three counts. 1. On mutual promises. 2. On the stock contract. 3. For money had and received to the plaintiff's use.

The stock contract run in these words;—" On the 18th April 1792, I promise to receive from Joseph Boggs, or order, 10,000 dollars six per cents. and pay him for the same at the rate of 1*l*. 3*s*. 7¾*d*. per pound.                                        FRANCIS INGRAHAM."

An assignment was indorsed thereon, as follows;—" I do hereby authorize William Reed, or his order, to tender or deliver the stock within mentioned, and the said William Reed, or his order, to receive for the same the sums of money due and payable therefor at the rates within expressed.                                        JOSEPH BOGGS."

7th April 1792.

The counter contract was thus expressed:—" On the 18th April 1792, I promise to transfer to Francis Ingraham, or order 10,000 dollars, six per cents. upon his or their paying to me or my order for the same at the rate of 1*l*. 3*s*. 7¾*d*. per pound.        JOSEPH BOGGS."

Mr. E. Tilghman in support of the motion. Though mutual promises are laid in the first count, yet no evidence having been given of them, they must be laid out of the question. As to the third count, though it has been held that on a contract for stock, the party who has the difference in his hands is receiver of so much to the other's use, (1 Stra. 406,) yet this was where money was paid on the promise to transfer, which does not exist in the present instance. The plaintiff therefore can only support the verdict on the second count, and on this point we are at issue.

It is a rule at common law, that choses in action are not assignable, so as to enable the assignee to recover in his own name. Co. Lit. 214. *a*. 266. *a*. Suppose an account for goods sold to be assigned by the creditor, how could the assignee declare? Or, suppose an obligation without the word " asssigns " to be transferred to another, could the assignee maintain the suit? Before the statute of 3 and 4 Anne, no action could be supported on a promissory note as an instrument; and

after the statute it is not negotiable, unless it was originally made payable at all events, and to order. 2 Ld. Raym. 1361. 1 Dall. 194. 2 Dall. 249. If an indorsee cannot support an action on a promissory note not made payable to order, a *multo fortiori* would this be the case on a stock contract where such word was omitted. Besides this is a mere contract for the difference of stock and therefore depended on a contingency.

The case is not correctly reported in 3 Dall. 305, where it is said, that experienced brokers proved on the trial, that such contracts had always been considered in Philadelphia as assignable, and vested the interests so completely in the assignees as to enable them to proceed in their own names against the defaulters ; but had such been the fact, from whence could these brokers derive their knowledge, or what instances could they cite in support of their opinion ? They might possibly explain the generally received import of the words used in such instruments, but could go no further. Lord Chief Justice Holt decided against the form of an action brought on a promissory note as on a bill of exchange, within the custom of merchants, and declared that Lomb'ard street should not give law to Westminster Hall. 2 Ld. Ray. 758. 1 Salk. 129. And it is incontrovertible, that the most pernicious consequences must flow from brokers being allowed to give evidence as to usage in transactions of this nature. No counsel could know how to advise his client under such circumstances. On a question, whether a bill of exchange payable to order, may be indorsed over without the word " order " to the indorsement, the usage of merchants was proved at the trial ; but Lord Mansfield afterwards candidly declared, that he was very clearly of opinion, that he ought not to have admitted any evidence of the particular usage of merchants, in a case where the law was already settled. 2 Burr. 1222. And Foster and Wilmot, justices, concurred therein. *Ib.* 1225, 1228.

Messrs. Ingersoll and M. Levy for the plaintiff. We might rely on our count for money had and received. *Indebitatus assumpsit* will lie for the difference on a stock contract where money has been paid. Here the plaintiff has paid money to Boggs, with whom the defendant contracted, in confidence that the agreement would be honestly executed. 1 Stra. 406.

But on the second count, on a fair construction of the two instruments taken together as one agreement, it cannot be denied that the appointee of Boggs might receive the money and transfer the stock. They amount to an appropriation of the money to the assignee of the note, in whose hands soever it might be at the time the act was to be done.

The words " or order " in the instrument, must have been introduced to convey some idea or answer some purpose, and cannot be rejected. What then is the true meaning of the engagement to receive from Boggs or his order?" Could it contemplate the agent or attorney in fact of Boggs, after he had parted with his interest and possibly became insolvent? Surely not. The words " pay him" will equally apply to the plaintiff as well as Boggs ; and the counter engagement shows this clearly, by the expressions " on his paying me or my order." All covenants and contracts ought to be performed according to their true intent. T. Ray. 464.

It certainly was an ancient rule, that choses in action were not assignable, but the system of the law has been considerably ameliorated during the last century. The statutes of 9 and 10 Will. 3, and 3 and 4 *Annæ*, broke in upon the old rule as to promissory notes and bills of exchange, and our act of assembly of 28th May 1715, has gone further in the case of specialties. This rule was never adopted in courts of equity. Payment to the obligee of a bond after notice of the assignment is invalid. 2 Vern. 540. Nor was it ever supposed to hold against the crown. Dy. 30. *b.* Cro. Jac. 82, 179. 3 Lev. 135. Savil 133. Hard. 158. Even courts of law in their inquiries did not respect the rule. A debt assigned in satisfaction of another debt, is not liable to attachment for the debt of the assignor. 2 Jon. 222. Mr. Justice Buller, in his elaborate argument in Master v. Miller, has clearly shown, that there is no use or convenience in preserving that shadow of a rule when the substance is gone. 4 Term Rep. 340.

Lord Holt's principles, in the case cited by the defendant, seem to be considerably impugned by the court in 3 Burr. 1668.

A strong case may be cited to show, that a general *indebitatus assumpsit* for money had and received, will lie for the assignee of a *respondentia* bond, the obligor having before hand engaged by an indorsement to pay the same to any assignee. Fenner v. Meares. 2 Bla. Rep. 1267. S. C. cited 4 Term Rep. 342. If that indorsement had been inserted in the body of the bond, it would have produced the same effect, and amounted to a particular promise to the assignee, when an assignment was made.

It could not have been improper to produce the testimony of the brokers, who were conversant in such transactions to a great amount. They best could point out what was the universal idea of such instruments generally received and acted upon. In the case cited from 2 Burr. 1222, adjudged cases militated against the mercantile usage attempted

to be established.  But none such occur here, and therefore the evidence deserves considerable weight.

In a remarkable cause in South Carolina, Judge Waites was of opinion, that commercial usage would make any instrument negotiable independent of the aid of statutes.

We may resist the motion for a new trial on another ground. Equity principles are adopted in this state where we have no resort to a court of chancery.  Whatever will be a good ground for a bill in equity, will support a suit at law in Pennsylvania.

He for whose benefit a promise is made, may support a suit thereon. Bull. 133. 1 Vent. 318, 332. Though there be no contract between parties, yet where money or goods are delivered upon consideration to the use of A. he may have an action for them. Yelv. 24.  A curate may maintain suit against a rector, on a written promise to the bishop, to pay such curate a yearly sum.  Doug. 139.  An assignee of one of the captors may support a suit for prize money against the agent. 1 Wils. 211.

Courts of law will go very far to establish an honest claim under particular circumstances, even contrary to former general resolutions. Of this the case of Minet and Fector v. Gibson and Johnston furnishes a strong instance ; a bill of exchange in favor of a fictitious payee, indorsed by the drawers, and accepted by persons having knowledge of those circumstances, was considered as payable to bearer, and the usual rule of proving the hand-writing of the first indorser as w got over. 3 Term Rep. 481. 1. H. Bla. 569.

Here the motion for the new trial is founded on an exception to the form of the action, without the smallest pretension to merits.  In the case of Ralston v. Cummins in this court, the same attempt was made, but rejected by the court unanimously not suffering the argument to proceed.

Mr. Lewis for the defendant, in reply.  The exception now urged, was insisted on at the trial.  The court then overruled it, and should they be now satisfied, that they were mistaken in so doing, the defendant is entitled to every advantage, which the legal objection presents to him.  Such was the idea of all the counsel.

It is certain, that an action for money had and received, will not lie in respect of stock, where no money was received. 5 Burr. 2569. The payment of money by Reed to Boggs, can have no effect on the principle. Vid. 1 H. Bla. 243.  This is a special wagering contract. The plaintiff must therefore depend alone on his second count.

It is not denied, that the courts of law of this commonwealth,

have adopted the great principles of courts of equity, from necessity. But it will not be asserted, that they have gone into the adoption of their mode of relief. In the case animadverted on, Lord Holt only decided on the manner of declaring on promissory notes before the statute ; and it will readily be admitted, that on any written contract, not under seal nor negotiable, the only formal method of declaring would be with a *colloquium*, reciting the contract, as if it had been by parol, and afterwards giving the writing in evidence.

If there had been only one contract between the parties, the plaintiff's doctrine might with more reason prevail ; but the case was otherwise, and it was therefore highly necessary to omit in the subsequent part of the instrument on which the suit is founded, the words " or order. " In the ultimate event of all their wagering contracts, Ingraham might become entitled to receive money from Boggs. To consider the instrument as assignable, is in fact depriving the defendant of the benefit of a set-off, comtemplated by the parties in other contracts.

It has been urged, that the word " him, " in the close of the instrument will equally refer to the plaintiff the appointee, as to Boggs. If the plaintiff's counsel really thought so, much labor might have been spared, by drawing a common declaration, as on an indorsed note. The counter agreement merely authorizes the defendant to pay the difference to Boggs, or one impowered by him to receive it. It is obligatory on Boggs alone ; not on the defendant, who never subscribed the paper. In Fenner *v.* Meares, on which so much stress has been laid, there was a new independent contract, indorsed on the *respondentia* bond, and of this circumstance the plaintiff's counsel availed themselves on the argument ; but had this been expressed in the body of the specialty, the suit must have been brought necessarily in the name of the obligee, though for the use of the assignee.

Upon the whole, it is submitted to the court, whether the sanctioning of the present form of action, would not be an invasion of those rules which have hitherto governed courts of common law.

*Curia advisare vult.*

After a few days consideration, the court expressed their opinion *unâ voce*, to the following effect.

It appears to us, that the nature of the contract in the present case, is evidenced beyond a doubt by the two notes exchanged between the parties at the same time, that the one should receive the stock from, and the other should pay to the several parties " or their order. " This engagement by each to the other, amounts to a power to assign the subject matter of the suit, and under all the circumstances of the case

disclosed on the trial, to enable the assignee to bring an action in his own name for a breach of the contract.

The case of Fenner v. Meares, cited in 4 Term Rep. 342, and reported at large in 2 Bl. Rep. 1267, comes fully up to the point, at law ; and on the reason and principles of that case, we think ourselves authorized to determine according to what we deem the justice and honesty of the present question between the parties.

If the suit had been instituted in the name of Boggs himself, it did not appear at the trial, that there were any other contracts between the parties, on which the defendant could have availed himself of a set-off.

Judgment for the plaintiff.